## Richmond.

### COLES AND WIFE v. HURT, FOR, &c.

#### March 17.

1. C and L before their marriage, enter into a contract, by which it is agreed, that the property of C shall be alone liable for his debts, and that of L alone liable for her debts. After the marriage C is a trustee of the wife's property; and a creditor of L for a debt due before the marriage, may sue C and L in equity to subject the property she owned to satisfy the debt.

2. In such case C files an answer, defending the case for both, and there is a demurrer to the bill in the name of both. There being no special circumstances requiring that the wife should be separately defended, it was not necessary to appoint a guardian *ad litem* to defend her.

3. A cause having been brought on to be heard upon the bill, answer, demurrer, exhibits, &c., it will be held, that as everything else is specified, the "&c." refers to the replication to the answer.

4. The contract between C and L, though it subjects the property to the payment of her anti-nuptial debts, does not exempt the husband from liability to creditors for such debts.

5. The creditor of L, the wife, having proceeded in equity to subject the wife's property to the payment of her debt, cannot have a personal decree against C and his wife for the debt; but he must proceed against the wife's property on the terms and conditions on which that property was dedicated to his security; that is, that the husband and his property shall be exempt from all liability.

6. The liability of a husband for his wife's debts is a legal liability, and must be prosecuted by action at law.

This was a suit in equity in the circuit court of Pittsylvania, brought by John L. Hurt, for the benefit of James D. Hurt, against Isaac Coles and Martha B., his wife, to sub-

ject the estate of said wife to the payment of a bond for $1,442.49, alleged to have been executed by the said Martha B. whilst *feme sole*. The bill, after setting out the execution of the bond by the defendant whilst she was Martha B. Leftwich, and her intermarriage with the defendant Isaac Coles in December, 1873, charges that prior to their marriage the said Martha B. and the said Coles entered into a contract whereby it was agreed between them that the property each then owned should be exclusively liable for the debts of the one owing the debts, and that the property owned by the said Isaac Coles should be alone liable for any debts he owed, without any liability for the debts of said Martha B. Leftwich, and that the property of the said Martha B. Leftwich should be alone chargeable with her debts, and free from any liability for the debts of the said Coles. And this agreement was duly recorded.

The bill further charges that under this contract the said sum of $1,442.49, with interest, is a charge upon the property of the said Martha B. Coles at the time. or which she has since acquired and owns. The plaintiff is not certain but what the debt is a charge also on that of her husband Isaac Coles; but on this he does not insist, unless the property of Martha B. Coles is insufficient to discharge the debt, or the said Isaac Coles may claim the property of Martha B. Coles; in which event he will insist upon it, unless the court decides the said Isaac Coles is also liable for the debt. He is advised that the property of the said M. B. Coles is liable to be subjected to the payment of his debt, and he asks that it may be so subjected. And he prays that a decree may be made for the payment of his debt with interest; and for general relief.

The plaintiff exhibited with his bill the bond of Martha B. Leftwich, which bore date on the 23d of December, 1873, and was payable in two years, with interest from its date, and also the agreement between Isaac Coles and Martha B.

Leftwich. This agreement bore date the 19th of December, 1873. It is correctly stated in the bill, and more fully in the opinion of Judge *Burks.*

Isaac Coles filed his answer to the bill, to which the plaintiff replied generally. And at the same term of the court Coles and his wife filed their joint demurrer to the bill.

Coles, in his answer, says he knows nothing of the execution of the note for $1,442.49, but admits the execution of the marriage contract, as set out in the bill, and that his property is in no wise bound for the payment of said note. He has been informed, and believes and avers, that said note, if executed by his wife, was for the purpose of paying debts of her former husband, J. W. Leftwich, and if now due and unpaid should be paid out of his estate. And he refers to a suit pending in the same court for the sale of a tract of land of said J. W. Leftwich for the assignment or commutation of dower therein, and the investment of the balance of the proceeds thereof for the benefit of the infant children of said J. W. Leftwich. And he asks that the causes may be heard together, and if the said debt is due that it may be paid out of the proceeds of said land before the separate property of Mrs. Coles is subjected to the payment thereof.

The cause came on to be heard on the 15th of August, 1877, " on the bill, the demurrer thereto of the defendants, the answer of Isaac Coles, exhibits, &c.," when the court overruled the demurrer, and decreed that the plaintiff recover of Isaac Coles and Martha B. Coles, his wife, the sum of $1,442.49, with interest thereon from the 23d day of December, 1875, and the costs of the suit. And liberty was reserved to the plaintiff to proceed hereafter, if it is necessary, to subject any separate estate belonging to the female defendant to the payment of the debt. And thereupon Coles and wife applied to a judge of this court for an appeal and *supersedeas;* which was awarded.

*Johnston, Williams & Boulware,* and *Whittle & Sims,* for the appellants.

*J. Alfred Jones,* for the appellee.

BURKS, J., delivered the opinion of the court.

The objections on assignments of error by the appellants (defendants below) will be considered more conveniently by varying somewhat the order in which they are presented in the petition for appeal.

1. That the demurrer to the bill should have been sustained, because the complainant had a plain, complete and adequate remedy at law.

The contract between the appellants, duly executed and recorded before marriage, was substantially a dedication of the wife's property of every description owned by her at the date of the marriage to the payment of her ante-nuptial debts, and the effect was to create a trust estate in the property for that purpose. There being no conveyance, the husband will be considered and treated as trustee, and, at the instance of the beneficiaries, compelled to execute the trust. Equity only has jurisdiction to enforce it. This would be so whether the property be regarded as the separate estate of the wife charged by the contract with the payment of her anti-nuptial debts, or whether the husband's marital rights attached to it thus charged. In either case the jurisdiction in behalf of a creditor claiming the benefit of the trust, would be in equity to carry it into effect. The bill of the complainant is brought with that view, and upon that ground and that only, it may be maintained.

2. That the court by order should have appointed some proper person to defend the wife in the suit.

There was no necessity for such order. The wife did not

ask it. Her husband, who in equity is trustee in respect of the property sought to be subjected, was a party, and a necessary party, to the cause. It was competent for him, and it was his duty, to make defence for her, and he made it. He filed a joint demurrer to the bill for her and himself and also answered in proper person, defending as well for her as for himself. No objection was made because a joint answer was not filed. There were no special circumstances, as is sometimes the case, requiring that the wife should answer or otherwise defend separately, or that she should be represented by next friend formally appointed by the court. Story Eq. Plead. § 71.

3. That there was no replication to the husband's answer, and therefore its statements, though affirmative, must be taken as true, and so taken, the debt claimed against the wife was really the debt of her former husband, and should be paid out of his estate alleged in the answer to be in the power and under the control of the court.

The conclusive answer to this objection is, that a replication was filed. The record shows it, and further, the decree recites, that the cause was heard on the bill, demurrer, answer, exhibit, " &c." It is not necessary to give to the " &c." as here used by the judge the same force and effect which Lord Coke attributes to it wherever employed by Littleton in his work on Tenures; but it was intended to have some meaning, and *must* refer to the replication, as everything else in the record is referred to specifically in that connection.

The affirmative statements being thus denied, and no proof offered to establish them, they are of no force in the case. The bill charges, among other things, that the bond exhibited with it and upon which a recovery is sought, was "executed" by the female defendant *dum sola*. The respondent, in reference to this allegation, only says, "that he knows nothing of the execution of the note," &c. This is

not such a denial, though the answer is sworn to, as the statute (Code of 1873, ch. 167, §§ 38, 39) requires in order to put the complainant to proof of the obligor's handwriting. *Simmons* v. *Simmons' Adm'r*, 33 Gratt. 451. The bond therefore must be taken in this cause as duly executed and to be, what it purports, the personal covenant of the obligor to pay her own debt, without equitable claim on her former husband's estate.

4. The point in the remaining objections is, that the decree is erroneous, because it is against the husband as well as the wife personally; and this makes it necessary to consider whether the husband is liable for his wife's debt contracted before marriage. There cannot be a doubt, that in well settled principles he is so liable, if recovery be had against him, unless the effect of the marriage contract is to exempt him. That contract provides, in substance, that the property of each party, as at the date of the marriage, shall be chargeable with the owner's debts then existing, and that neither party shall be liable in person, or in estate owned at the marriage, for the then existing debts of the other. It is to be observed, that there is no limitation of estate to any one; and the manifest design was, that the rights and liabilities of the parties *inter se*, as husband and wife, should not be affected further nor otherwise than they might be by the provision already stated. This is apparent from the last clause of the contract in these words: "But this agreement shall in nowise interfere with, modify or change the marital rights of either of said parties after the solemnization of said marriage, except as prescribed as aforesaid."

It is not essential to the decision of any question necessarily arising in this case to determine whether, under the contract, the wife takes a separate estate in her property, or whether the marital rights of the husband attach to it, inasmuch as the property is primarily charged by the con-

tract with her debts. The important inquiry is, whether the stipulation that the husband shall not be liable in person or estate for these debts is effectual. As a covenant, supported by the consideration of marriage, it is good between the parties, though, if not kept and fulfilled by them, it might, on account of the marriage relation, be difficult, if not impossible, for either party to enforce it against the other through the agency of the courts. Still, the question remains, is the contract obligatory on the wife's ante-nuptial creditors who are not parties to it? On principle, as it seems to us, the question must be answered in the negative. It has been the rule of the common law for ages that the husband is answerable for the wife's ante-nuptial liabilities, if enforced during coverture; and in this respect equity follows the law. It does not matter on what principle the rule is founded; whether, as Bishop earnestly contends (2 Bishop on Law of Married Women, § 308–325), it is because the wife cannot be sued alone during coverture, and her husband must be joined in the suit for conformity, or, as others say, because the husband acquires rights in her property by marriage, and therefore ought to pay her debts. Whatever the true reason of the rule, as a legal principle it is absolute and must prevail, unless and until it be abrogated or modified by legislation, as it has been, we believe, in many if not all of the States of the Union. A statute on this subject was enacted in this State March 31, 1875 (Acts 1874–75, ch. 359), but this was after the intermarriage of the appellants, and therefore the act, which is not retrospective, does not effect the case before us. See also Acts 1876–77, ch. 329; Acts 1877–78, ch. 265.

It is not competent for parties, by their sole agreement, though made in consideration of marriage, which is a valuable consideration, to set aside an established rule of law, so as to control the legal rights and interests of third persons. They may, perhaps, bind themselves by such an

agreement, but they cannot bind the rights of others against their will.   A creditor has, apart from statute regulation, the unquestionable legal right to sue husband and wife for the debt of the wife contracted before marriage, while sole, and to coerce payment from the husband of a judgment for such debt recovered during coverture.   It is no answer to the demand in such suit that the husband and wife stipulated between themselves before and in contemplation of marriage that the husband and his property should not be liable for the wife's ante-nuptial debts.   The conclusive reply to such a plea is, that whatever the parties may have agreed upon, *the law* creates the liability of the husband and gives to the creditor the right to enforce it, and they cannot, so far as he is concerned, change the law at their mere will and pleausre, and take away the right.

The principles are fully sustained by the authorities. *Christian* v. *Hanks and others*, 22 Geo. R. 125 ; *Obermayer and others* v. *Greenleaf and others*, 42 Mo. R. 304; *Harrison* v. *Trader and Wife*, 27 Ark. R. 288, are cases directly in point; *Clauson* v. *Hutchinson*, 11 So. Car. (Shand), 323, has some bearing on the question.

But while, under the principles which have been enunciated, the contract in the case under judgment cannot bind the creditors interested against their will, they may give effect to it if they elect to do so.   As has been stated, it creates a trust for the benefit of the creditors.   They may reject or accept it at their option.   If they reject it, they may proceed at law to enforce their claims and the contract will not impede them.   If they accept it, their remedy is in equity to enforce the trust against the property, not to obtain a personal decree.   Such is the attitude of the complainant in this case.   He is in a court of equity asking to have the wife's property applied as a trust subject under the contract to his debt.   To this relief he is entitled.   But if the contract is to be put in force at his instance and for

his benefit as the wife's creditor, effect must be given to
the whole. He cannot be permitted to insist on the part
which is to his advantage and repudiate that which he
deems prejudicial. If he subjects the wife's property under
the contract, as he seeks to do, he must submit to the terms
and conditions on which by that contract the property was
dedicated to his security—namely, that the husband and
his property shall be exempt from all liability. He has
made his election and he must abide by it.

The conclusion is, that the circuit court erred in giving
a personal decree against the appellants for the complain-
ant's debt. The bill was brought to reach the wife's
property under the marriage agreement, not to obtain a
personal decree. Indeed, if such had not been the case, the
objection for want of jurisdiction would have been fatal.
There is nothing in the record to show what estate, if any,
the wife has, which is liable. The court should have or-
dered an inquiry into that matter and directed accounts
preparatory to a decree against the property, if any there be.

The decree of the circuit court will be reversed and the
cause remanded for further proceedings to be had in con-
formity with this opinion.

The decree was as follows:

This day came again the parties by their counsel, and
the court, having maturely considered the transcript of
the record of the decree aforesaid and the arguments of
counsel, is of opinion, for reasons stated in a written opinion
filed with the record, that the said decree is erroneous;
therefore it is decreed and ordered that the said decree be
reversed and annulled, and that the appellants recover
against the appellee their costs by them expended in the
prosecution of the appeal aforesaid here; and this cause is
remanded to the said circuit court with directions to order

proper inquiries and accounts and for further proceedings, in order to final decree, in conformity with the views and principles declared in the written opinion aforesaid, an attested copy of which opinion, together with this decree, is ordered to be certified to the said circuit court of Pittsylvania county.

DECREE REVERSED.